2008 UT 16

**STATE of Utah, Plaintiff and Appellee,**

v.

**Kevan Cliff EYRE, Defendant and Appellant.**

**No. 20050664.**

Supreme Court of Utah.

Feb. 22, 2008.

Rehearing Denied Feb. 22, 2008.

Mark L. Shurtleff, Att'y Gen., Mark W. Baer, Jeffrey S. Gray, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

Lori J. Seppi, Salt Lake City, for defendant.

## AMENDED OPINION

DURRANT, Justice:

### INTRODUCTION

¶ 1 Defendant Kevan Eyre appeals his convictions on six counts of felony tax evasion. Eyre argues that the State presented insufficient evidence to support a conviction for tax evasion by failing to prove the existence of a tax deficiency, which Eyre asserts is a necessary element of the offense of tax evasion. Eyre also argues that his trial counsel pro-

vided ineffective assistance by making several missteps at trial. We hold that the existence of a tax deficiency is an element of Utah's felony tax evasion statute. We also find that Eyre's trial counsel's assistance was deficient and prejudicial to his defense. Because of this ineffective assistance, we reverse Eyre's convictions for felony tax evasion and remand for a new trial.

## BACKGROUND

¶ 2 Eyre failed to file Utah state income tax returns for tax years 1991 through 1995. The Utah State Tax Commission (the "Commission") thereafter prepared and sent to him tax estimates for each of those years, and in 1997 Eyre ultimately filed returns for 1991, 1992, 1993, 1994, and 1995. But Eyre again failed to file tax returns for tax years 1997 through 2002, and the Commission initiated a criminal investigation. Eyre was ultimately charged with six counts of failing to render a proper tax return ("failure to file"), a third degree felony; six counts of intending to defeat the payment of a tax ("tax evasion"), a second degree felony; and one count of failing to obtain a license to act as a dealer or salesperson of motor vehicles, a misdemeanor.

¶ 3 At trial, the State presented evidence of Eyre's gross income for tax years 1997, 1998, 1999, 2000, 2001, and 2002. During this period, Eyre received income from various sources: residential rental properties; the sale of those rental properties; the sale of various vehicles, boats, pianos, and camper trailers; newspaper routes; and services he performed for a law office. For each of these years, the State showed that Eyre's income exceeded the minimum amount of gross income for which taxpayers were required to file a state income tax return. The State also presented evidence that some of Eyre's tenants paid rent in cash, for which they did not receive receipts, and that Eyre engaged in many other cash transactions, suggesting he received more income than the Commission was able to verify in its investigation. The State did not give Eyre credit for any exemptions, deductions, or business losses because, according to its expert wit-

ness, he was not entitled to them because he did not file tax returns.

¶ 4 At the close of the State's case in chief, Eyre moved to dismiss for insufficient evidence, arguing that the State offered "no direct evidence with regard to intent to evade the payment of tax" and that he owed no taxes for any of the years in question. The court denied the motion, stating that "there is sufficient evidence in each of the counts to send this matter to the jury."

¶ 5 Eyre's defense consisted primarily of the assertion that he believed his deductions had outweighed his income for each year, which would result in no tax liability, and that he therefore did not fulfill the intent element of tax evasion. Eyre's trial counsel called Eyre to testify and attempted to admit into evidence a document Eyre had prepared that summarized Eyre's finances and purported to show that he had no tax deficiency for each of the years in question. The State objected to the document's admission, arguing that it lacked foundation and was thereby inadmissible. On voir dire, Eyre testified that he had prepared the document from his own records over the previous three days. Calling the document "unreliable," the court sustained the State's objection. Having failed to admit the document into evidence, trial counsel referred Eyre to the summary sheet Eyre used to prepare the inadmissible document and asked him to compare it to the Commission's summary of his income. Eyre testified that he had more income than the Commission had identified but that he also had "lots" more expenses, resulting in a loss for each of the charged years. Eyre's trial counsel failed to produce any of the documents on which Eyre relied for his testimony and did not call an expert witness to analyze or testify concerning Eyre's tax status.

¶ 6 On cross-examination, the State questioned Eyre about a prior felony conviction for making a false statement on an application for an Idaho state fish and game license. Although Eyre had previously filed a motion in limine to exclude his prior conviction, which the court granted with respect to the State's case in chief, the trial court permitted the State to question Eyre regarding his previous conviction for purposes of impeach-

ment. Eyre's counsel mentioned the circumstances surrounding the conviction in his opening statement and did not object to the State's cross-examination.

¶ 7 At the close of trial, the trial court instructed the jury as to the elements of failure to file and tax evasion. For tax evasion, the jury instructions read, in relevant part, as follows:

Before you can convict the defendant, Kevan Cliff Eyre, of the crime of Intent to Defeat the Payment of a Tax, ... you must find from the evidence and beyond a reasonable doubt, each and every one of the following elements of that offense:

1. That the defendant intentionally did, or willfully attempted to;

2. Evade or defeat the Utah State income tax for year 1997 [and subsequent years charged]; or

3. The payment of the Utah State income tax for year 1997 [and subsequent years charged].

The trial court further instructed the jury that "[a] defendant engages in conduct intentionally, or with intent or willfully, with respect to the nature of the defendant's conduct, or to a result of the defendant's conduct, when it is his conscious objective or desire to engage in the conduct or cause the result." The trial court also instructed the jury that the State "need not show ... a precise amount or all of the tax due. The State is only required to establish, beyond a reasonable doubt, that the defendant intended to evade the payment of a tax, in this case, Utah State Income Tax(es)." And the court instructed,

In order to show that the defendant "attempts to evade or defeat any tax," the State must prove beyond a reasonable doubt that the defendant intended to evade or defeat a tax due, and that the defendant also willfully did some affirmative act or willfully failed to do some act required of him by law in order to accomplish this intent to evade or defeat a tax.

¶ 8 Eyre's counsel did not object to any of the jury instructions. The jury subsequently convicted Eyre on all counts for failure to file and tax evasion and found him not guilty of failure to obtain a license.

¶ 9 Eyre retained new counsel for the sentencing phase of his trial and employed an expert to prepare his tax returns for tax years 1997 through 2002. The expert used a "conservative approach" in preparing Eyre's returns, which showed no deficiency for some of the charged years and a small deficiency for the other years. The trial court imposed a fine of $2500 on Eyre and sentenced him to concurrent prison terms of zero to five years on each conviction for failure to file and consecutive prison terms of one to fifteen years on each conviction for tax evasion. The court then suspended the prison terms and placed Eyre on probation. The State thereafter filed a motion to correct the sentence, which the court granted. The court imposed the correct fine of $15,000 on Eyre and suspended all but $2500 of it contingent upon Eyre's successful completion of probation. Eyre now challenges his convictions on appeal.

## ANALYSIS

 ¶ 10 Eyre urges us to reverse his convictions for tax evasion on two general grounds. First, he argues that the State failed to present sufficient evidence to prove that he had a tax deficiency, which Eyre claims is a necessary element of tax evasion, for each of the tax years in question. Second, he argues that his counsel rendered ineffective assistance. In the analysis that follows, we first address whether a tax deficiency is an element of tax evasion; this is a question of law that we review for correctness.[1] Because we agree with Eyre that a tax deficiency is an element of tax evasion, we then consider Eyre's claim that his counsel was ineffective in failing to object to the absence of a jury instruction identifying a tax deficiency as an element of tax evasion.[2]

1. *See Peterson v. Sunrider Corp.,* 2002 UT 43, ¶ 15, 48 P.3d 918.

2. Eyre has also appealed his convictions for failure to file a tax return, but in his briefs has not

argued that a tax deficiency is a necessary element of failure to file and has otherwise failed to adequately support his assertion that his failure to file convictions should be reversed. Accordingly, we decline to review these convictions.

## I. A TAX DEFICIENCY IS AN ELEMENT OF FELONY TAX EVASION UNDER UTAH LAW

¶ 11 Utah's felony tax evasion statute reads as follows: "Any person who intentionally or willfully attempts to evade or defeat any tax or the payment of a tax is, in addition to other penalties provided by law, guilty of a second degree felony."[3] Although this statute does not use the words "tax deficiency," it is logical to conclude that, if no tax is owing, there is no tax to evade. Utah's tax laws "assess[ ] income tax only on adjusted gross income, which is defined as all nonexempt income less allowable deductions."[4] Thus, a person does not owe income tax simply because he earned income. Rather, he owes income tax only if a tax deficiency exists after his exempt income and allowable deductions are subtracted from his gross income. To prevail on a felony tax evasion claim, the State must therefore show that a tax was, in fact, due and owing; merely establishing income does not suffice.

¶ 12 We have required the Commission to prove the existence of a deficiency when imposing a civil penalty on a taxpayer for "intent to evade a tax."[5] It would be inconsistent to require such a showing for a lesser civil offense that carries only a monetary penalty while not requiring the same showing for a criminal violation that carries a prison sentence.[6] Thus, we hold that the existence of a tax deficiency is an element of felony tax evasion under Utah law.[7]

¶ 13 We find it persuasive that the federal courts have interpreted the federal tax evasion statute, the wording of which is similar to our statute, to require the government to show a tax deficiency.[8] Like our statute, the federal statute does not explicitly reference a tax deficiency. The federal statute reads as follows: "Any person who wilfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . . ."[9] Because the wording of the Utah statute is almost identical to that of the federal statute, it is reasonable to conclude that the statutes should require the same elements, including the showing of a tax deficiency.[10]

¶ 14 We recognize that the federal statute speaks of "any tax *imposed by this title*"[11] while the Utah statute speaks only of "any

---

See *Ball v. Pub. Serv. Comm'n (In re Questar Gas Co.)*, 2007 UT 79, ¶ 40, 175 P.3d 545 ("We have consistently declined to review issues that are not adequately briefed.").

3. Utah Code Ann. § 76–8–1101(1)(d)(I) (2003 & Supp.2007). Although this statute has been amended slightly since the time Eyre was charged, the changes are not relevant to our analysis.

4. *Jensen v. State Tax Comm'n*, 835 P.2d 965, 970 (Utah 1992).

5. *See id.* at 970–71. The statutory basis for this penalty is found in Utah Code section 59–1–401(7)(a), (b) (Supp.2007).

6. *Compare* Utah Code Ann. § 59–1–401(7)(a), *with id.* § 59–1–401(12)(d)(I), *and id.* § 76–8–1101(1)(d)(I).

7. We respectfully disagree with Justice Wilkins's suggestion that our determination necessarily requires that a defendant successfully evade a tax to be guilty of tax evasion. Our holding requires only that a defendant evade—or attempt to evade—a *tax deficiency*, in other words, a tax actually owing. If a defendant has no tax deficiency, he has no tax to evade. Where the State can show a tax deficiency, both successful and unsuccessful attempts to evade that tax are subject to penalty under Utah's tax evasion statute.

We also emphasize that the State need not show a tax deficiency with precision. Rather, the State need only show that a tax was, in fact, owing. Although a de minimis tax deficiency may be sufficient to meet this requirement, we caution that the State may have difficulty proving the intent element of tax evasion without a greater showing.

8. *See Lawn v. United States*, 355 U.S. 339, 361, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958) ("'[A] conviction upon a charge of attempting to evade assessment of income taxes by the filing of a fraudulent return cannot stand in the absence of proof of a deficiency . . . .'").

9. 26 U.S.C. § 7201 (2000).

10. The other elements of the federal tax evasion statute are "willfulness" and "an affirmative act constituting an evasion or attempted evasion of the tax." *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965).

11. 26 U.S.C. § 7201 (emphasis added).

tax"[12] and does not directly reference the tax laws under which the evaded tax is imposed. We think it is necessarily implicit in our statute that the tax spoken of is a tax imposed by law. If a tax is not a tax imposed by law, it is not a tax at all. Thus, evading any "tax" under the language of the Utah statute is substantively no different than evading a "tax imposed by law" under the federal statute. Where the Utah statute and the federal statute are otherwise identical, there is no reason to draw a distinction based on language explicit in the federal statute that is implicit in ours.

¶ 15 We hold that proof of a tax deficiency is an element of Utah's tax evasion statute. In light of this holding, we consider Eyre's claim that his counsel was ineffective for failing to object to the absence of a jury instruction identifying a tax deficiency as an element of tax evasion. And as we explain in the following section, Eyre's counsel was ineffective in this regard. Because of this ineffectiveness, the question of whether Eyre had a tax deficiency was not submitted to the jury. Accordingly, we remand for a new trial.

## II. EYRE'S TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE

■■■■ ¶ 16 Whether Eyre's counsel rendered ineffective assistance is a determination governed by the two-part *Strickland* test, which requires the defendant to show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."[13] An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[14] The seriousness of those errors is measured by whether "counsel's representation fell below an objective standard of reasonableness."[15] Specifically, "[a] convicted defendant ... must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[16]

■■■■ ¶ 17 In addition to demonstrating his counsel's deficiencies, the *Strickland* standard requires that a defendant also show that those deficiencies affected the outcome of the proceeding.[17] Because "[t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding ... any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."[18] Thus, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."[19] Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[20] This "reasonable probability is a probability sufficient to undermine confidence in the outcome."[21]

¶ 18 In this case, Eyre claims that his trial counsel rendered ineffective assistance in four ways: first, by failing to object to the absence of a jury instruction listing the existence of a tax deficiency as an element of tax evasion; second, by failing to object to the instructions defining "intentionally and willfully attempts to evade"; third, by failing to examine Eyre effectively or call an expert witness; and fourth, by failing to object to the State's cross-examination of Eyre regarding a prior conviction. We find it necessary to address only the first of these four claims.

---

**12.** Utah Code Ann. § 76-8-1101(1)(d)(i) (2003 & Supp.2007).

**13.** *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**14.** *Id.*

**15.** *Id.* at 688, 104 S.Ct. 2052.

**16.** *Id.* at 690, 104 S.Ct. 2052.

**17.** *Id.* at 691–92, 104 S.Ct. 2052.

**18.** *Id.*

**19.** *Id.* at 693, 104 S.Ct. 2052.

**20.** *Id.* at 694, 104 S.Ct. 2052.

**21.** *Id.*

¶ 19 Eyre's counsel did not object to the jury instruction that omitted the existence of a tax deficiency as an element of tax evasion. Because a tax deficiency *is* an element of tax evasion, counsel's failure to object to a jury instruction that did not alert the jury to every element of the crime with which his client was charged amounted to a deficient performance. And this deficiency prejudiced Eyre. Eyre's defense at trial was that he failed to file his tax returns, not because he was trying to evade a tax but rather because he did not believe he had any tax due and owing. Had the jury been instructed properly, they could have made a determination regarding the State's proof of a tax deficiency and the plausibility of Eyre's defense. Even where the State may have been able to prove that a tax was due and owing, that tax may have been small enough that the jury could have found that Eyre in good faith believed that he did not have a tax deficiency and did not file as a result. The probability of this result is sufficient to undermine our confidence in the verdicts rendered by the jury.

¶ 20 Based on our conclusion that Eyre's counsel rendered ineffective assistance in failing to object to the jury instruction that omitted the requirement that a tax deficiency be shown, we reverse his convictions for tax evasion and remand for a new trial. Accordingly, it is unnecessary for us to consider his other three claims of ineffective assistance of counsel.

### CONCLUSION

¶ 21 We hold that the existence of a tax deficiency is a necessary element of the offense of tax evasion under Utah's statute. As a result, we find that Eyre's counsel was ineffective in failing to object to a jury instruction defining the elements of tax evasion that did not include the existence of a tax deficiency. Based on counsel's ineffective assistance, we reverse Eyre's convictions on all six counts of tax evasion and remand for a new trial. Eyre failed to adequately brief his appeal of his convictions on six counts of failure to file. For this reason, we affirm those convictions.

¶ 22 Chief Justice DURHAM, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.

WILKINS, Associate Chief Justice, dissenting:

¶ 23 I do not believe that a tax deficiency is a necessary element of tax evasion. I also do not believe that Eyre's initial counsel provided ineffective assistance at trial. Accordingly, I respectfully dissent.

¶ 24 The Utah tax evasion statute states that: "Any person who intentionally or willfully attempts to evade or defeat any tax or the payment of a tax is, in addition to other penalties provided by law, guilty of a second degree felony." Utah Code Ann. § 76–8–1101(1)(d)(i) (2003 & Supp.2007). The legislature, in the plain language of the statute, did not mention proof of a tax deficiency as an element of the crime. By adding such a requirement, my colleagues today eliminate from the scope of the statute nearly any unsuccessful criminal who tries, but fails, to defeat or evade a tax obligation.

¶ 25 The statute applies to anyone who "intentionally or willfully *attempts* to evade or defeat any tax." *Id.* (emphasis added). Successful evasion is not required for prosecution under the statute. All that is required is that the state show that the defendant intentionally attempted to evade a tax, not that the attempt was successful in whole or in part. The purpose of the statute is to criminalize the conduct of tax evasion (or the attempt), not to examine the result of the conduct (i.e., an actual tax deficiency).

¶ 26 In contrast, a civil tax enforcement proceeding, the purpose of which is to recover unpaid taxes, is concerned with the result of tax evasion. *See, e.g., United States v. Williams,* 875 F.2d 846, 851 (11th Cir.1989) (distinguishing the purposes of and the rules that apply to civil and criminal tax proceedings). To *recover* unpaid taxes, the state must prove the existence and amount of a tax deficiency. *See Jensen v. State Tax Comm'n,* 835 P.2d 965, 970–71 (Utah 1992). However, requiring the state to establish a deficiency in the criminal context unnecessarily restricts the scope of the action to only those whose actions were at least in part

successful in evading the payment of tax. Those whose attempt was unavailing must escape prosecution, as must those who are so successful that the level of success cannot be determined. Surely this is not what the legislature intended.

¶ 27 Civil and criminal tax enforcement schemes are not hierarchical; rather, they are directed towards different ends, and thus an element that is necessary in one context need not be interlineated into the other based solely on their related subject matter. To do so here, my colleagues not only rewrite the statutory language, they modify the legislative purpose by narrowing its scope dramatically. That is contrary to our responsibility.

¶ 28 Finally, the majority notes that federal case law has required proof of a tax deficiency in a similar statute. I am unpersuaded that this is a sufficient reason to graft a similar requirement into an otherwise clearly stated state statute.

¶ 29 Consequently, I would hold that proof of a tax deficiency is not a required element of criminal tax evasion under our statute, and dissent from the court's holding on that issue. Moreover, Eyre's claim that his trial counsel was ineffective is predicated on counsel's failure to object to the absence of a jury instruction on the "required" element of tax deficiency. Because proof of a tax deficiency is not an element of tax evasion, in my view, Eyre's trial counsel was not ineffective in failing to object. I therefore also disagree with my colleagues on the ineffective assistance of counsel claim.

¶ 30 Under the standard in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Eyre must show that the ineffective assistance of his trial counsel prejudiced the defense. I do not believe that Eyre has met this burden with respect to any of the four alleged deficiencies he has raised.

¶ 31 I would affirm.