**2020 UT App 79**

# THE UTAH COURT OF APPEALS

NORTHERN MONTICELLO ALLIANCE LLC,
Appellant,
*v.*
SAN JUAN COUNTY, SAN JUAN COUNTY COMMISSION, SUSTAINABLE
POWER GROUP LLC, AND LATIGO WIND PARK LLC,
Appellees.

Opinion
No. 20180225-CA
Filed May 21, 2020

Seventh District Court, Monticello Department
The Honorable Lyle R. Anderson
No. 170700006

J. Craig Smith, Jennie B. Garner, and Jay L. Springer
Attorneys for Appellant

Barton H. Kunz II, Paul W. Shakespear, and
Elizabeth M. Brereton, Attorneys for Appellees

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGE DAVID N. MORTENSEN concurred. JUDGE MICHELE M.
CHRISTIANSEN FORSTER concurred in the result, with opinion.

ORME, Judge:

¶1     Northern Monticello Alliance, LLC (NMA) appeals the
district court's grant of summary judgment in favor of
Appellees. The court ruled that the San Juan County
Commission properly remedied NMA's due process deprivation
by allowing NMA to be heard even though it had no
opportunity to present its own evidence. We reverse.

BACKGROUND[1]

¶2　In 2012,[2] the San Juan County Planning and Zoning Commission (the Planning Commission) issued a conditional use permit (CUP) to Wasatch Wind Intermountain, LLC (Wasatch Wind) allowing for the construction of a wind farm in San Juan County.[3] Owners of undeveloped land near the wind farm, who formed NMA, were not at the hearing when the Planning Commission granted the CUP. At a later hearing to consider amending the CUP, NMA opposed the CUP but withdrew its opposition after entering into a land purchase option agreement with Wasatch Wind. The Planning Commission issued an amended CUP to Wasatch Wind, after which Sustainable Power Group, LLC (sPower) acquired the wind farm.[4]

---

1. In reviewing a grant of summary judgment, we recite the undisputed facts. To the extent that the facts are disputed, "we recite the disputed facts in a light most favorable to the nonmoving party." *Begaye v. Big D Constr. Corp.*, 2008 UT 4, ¶ 5, 178 P.3d 343.

2. This case has a long and convoluted procedural history. We forgo reciting all that history and recite only the facts relevant to our ultimate holding in the current appeal.

3. The wind project in question is owned by Latigo Wind Park, which was originally a subsidiary of Wasatch Wind, and which was later sold to Sustainable Power Group, LLC. For ease of reference, we refer to actions taken by Latigo Wind Park as actions taken by the parent corporation that owned it at the relevant time.

4. NMA believed that sPower was required, under the amended CUP and after purchasing the wind farm from Wasatch Wind, to

(continued…)

¶3 After receiving complaints that sPower was not complying with the amended CUP, the Planning Commission held a hearing, following which it decided against revoking the amended CUP. At this hearing, the Planning Commission did not allow NMA to submit evidence or participate in any meaningful way.

¶4 NMA appealed the Planning Commission's decision to the County Commission, which sat as the land use appeal authority. *See* Utah Code Ann. § 17-27a-701(1) (LexisNexis 2017);[5] San Juan County Zoning Ordinance § 2-2(1) (2011). The County Commission initially reversed the Planning Commission, concluding that the Planning Commission did not rely on sufficient evidence in its decision. The County Commission remanded the case and "instruct[ed] the [Planning] Commission to allow NMA to be heard." After this decision to remand, sPower sent an ex parte letter to the County Commission asking it to reconsider its decision, claiming that the County Commission's decision would "result in damages to sPower in excess of $100 million." The letter stated that sPower, "frankly, considers" the action of the County Commission "to be arbitrary and capricious" and "requests that the County [Commission] agree to reconsider [its] [o]rder, and issue an amended order, no later than" the end of business in just four days. The County Commission reconsidered its order, reversed

---

(…continued)

exercise the purchase option and purchase the members' property once construction began on the wind turbines.

5. Because the statutory provisions in effect at the relevant time do not differ in any way material to our analysis from those now in effect, we cite the current version of the Utah Code for convenience.

itself, and upheld the Planning Commission's decision—all without hearing argument or taking evidence from NMA.

¶5     NMA sought judicial review in the district court. *See* Utah Code Ann. § 17-27a-801(2) (LexisNexis Supp. 2019); San Juan County Zoning Ordinance § 6-7 (2011). After hearing argument, the court remanded the case to the County Commission. It ruled, with our emphasis, that because "NMA did not have the same opportunity [as sPower] to argue its side of the case with regard to [sPower's] evidence *or to present its own evidence*," the County Commission's ruling did not "comply with basic due process" and thus was not "valid."

¶6     On remand, the County Commission allowed NMA to brief the issues and to participate in oral argument, but contrary to the district court's specific reference to the "opportunity . . . to present its own evidence," NMA was again forbidden from presenting "any additional evidence not already in the record" because the County Commission claimed that "the purpose of [the] rehearing was solely to consider sPower's request for reconsideration." The County Commission again upheld the Planning Commission's decision not to revoke the amended CUP.

¶7     NMA returned to the district court, seeking review of the latest County Commission decision. After receiving motions for summary judgment from both sides, the district court denied NMA's motion and granted Appellees' motion. In its ruling, the court stated that it

> expected that on remand the county commission
> would remedy its denial of due process to NMA by
> giving it a chance to respond to sPower's . . . letter
> . . . and to evaluate those arguments and consider
> any evidence in the record that NMA would want
> to call to the county commission's attention in

evaluating whether it should have reconsidered its decision. (The Court did not mean for the county commission to take evidence if it hadn't taken evidence in the first place.) The Court hasn't read anything in the memoranda or heard anything at argument that persuades it that the county commission didn't do what the Court expected it to do.

¶8 NMA now appeals the district court's ruling.

ISSUE AND STANDARD OF REVIEW

¶9 NMA argues that the district court erred in granting summary judgment to Appellees, thereby upholding the County Commission's decision, and that the court should have remanded the case "to conduct a plenary evidentiary hearing with instructions to allow NMA to participate and submit evidence on why the amended CUP should be revoked, as required by the Due Process Clause of the United States and Utah Constitutions." "We review a district court's decision to grant summary judgment for correctness, granting no deference to the district court's conclusions." *Gillmor v. Summit County*, 2010 UT 69, ¶ 16, 246 P.3d 102 (quotation simplified).

ANALYSIS

¶10 First, we must address whether NMA even had due process rights in the course of these proceedings. Appellees argue, quoting *Petersen v. Riverton City*, 2010 UT 58, 243 P.3d 1261, that "to state a cognizable substantive or procedural due process claim, a party must first allege sufficient facts to show a property or liberty interest warranting due process protection," *id.* ¶ 21 (quotation simplified), and that "there is no property right in the enforcement of zoning laws against others that

would give rise to the due process right NMA claims." While this precept may generally be true—which we do not decide in this case—Appellees overlook that NMA's members had due process rights granted by statute and local ordinance in this situation.

¶11 The Legislature has instructed that "any person adversely affected by the land use authority's decision administering or interpreting a land use ordinance may . . . appeal that decision," Utah Code Ann. § 17-27a-703(1) (LexisNexis 2017), and the "appeal authority shall respect the due process rights of each of the participants," *id.* § 17-27a-706(2). The applicable county ordinance states that in issuing CUPs, the Planning Commission must impose "requirements and conditions as are necessary for the *protection of adjacent properties* and the public welfare." San Juan County Zoning Ordinance § 6-4 (2011) (emphasis added). And the Planning Commission cannot issue a CUP unless "evidence [is] presented . . . to establish" that the use of the land "will not . . . be . . . injurious to property or improvements in the vicinity." *Id.* The ordinance then provides that "[a]ny person aggrieved by a decision of the Planning Commission . . . regarding the issuance, denial or revocation or amendment of a [CUP] may appeal such decision to the [County Commission]," *id.* § 6-7, which "shall respect the due process rights of all participants," *id.* § 2-2(2)(f).

¶12 NMA has shown that its members are adversely affected or aggrieved because (1) the wind farm was built next to their properties, significantly affecting their use and enjoyment thereof; (2) the wind farm adversely affects their properties' value; and (3) this injury could be remedied by their requested relief, i.e., revocation of the amended CUP. *See Morra v. Grand County*, 2010 UT 21, ¶ 15, 230 P.3d 1022 (holding that a "person adversely affected by a land use authority's decision" is one that has "(1) adequately alleged a personal injury resulting from a land use decision, (2) adequately alleged a causal relationship

between the decision and the alleged injury, and (3) requested relief that is substantially likely to redress the alleged injury"). Appellees concede that NMA is an adversely affected party because NMA was "entitle[d] to appeal the [P]lanning [C]ommission's decision not to revoke sPower's permit to the [C]ounty [C]ommission." But Appellees attempt to splice the proceedings into two distinct segments, claiming that while NMA may have "had a due process right to be heard on sPower's reconsideration request" before the County Commission, it did not have "a due process right to be heard at sPower's revocation hearing." We are unpersuaded.

¶13   We fail to see how an adjacent landowner with the right to appeal a land use decision and be afforded due process rights by the appeal authority would not also necessarily be afforded due process rights throughout the entirety of the proceeding. Indeed, the appeal authority is required to "respect the due process rights" of adversely affected parties, Utah Code Ann. § 17-27a-706(2), and it cannot uphold those rights if the party was denied due process in the pivotal initial stages of the proceeding. Otherwise, the appeal authority will be reviewing a proceeding in which the adversely affected party was unable to present evidence or be properly heard—a meaningless exercise. Any review of the prior proceeding in such a scenario would, therefore, be slanted in favor of the other party's position because only evidence favorable to that party will have been received. If Appellees' view were correct, any adversely affected or aggrieved party could be muzzled at an initial hearing and barred from presenting evidence to counter its opponent's evidence, and then the appeal authority would be essentially powerless to overturn the initial decision because there would be no contrary evidence in the record.

¶14   The appeal authority cannot, therefore, respect the due process rights of the adversely affected party in this scenario because any review would be illusory. Indeed, the statutory

scheme, when considered in conjunction with the county zoning ordinance, convinces us that adjacent land owners who are adversely affected or aggrieved by a land use decision have due process rights at each stage of the process because the statutes and ordinances clearly provide protections to adjacent property owners who are harmed by a CUP from the beginning—not just on appeal. *See* San Juan County Zoning Ordinance § 6-4; *id.* § 1-5(19) (stating that for a CUP to be approved, "certain conditions are required that mitigate or eliminate the detrimental impacts" of that use). And a scheme designed to protect and mitigate injury to adversely affected or aggrieved adjacent landowners, but does not give them the ability to properly present their evidence, is no protection at all.

¶15    Thus, as an adversely affected or aggrieved party, NMA had the right to appeal the Planning Commission's initial decision not to revoke the amended CUP, *see* Utah Code Ann. § 17-27a-703(1); San Juan County Zoning Ordinance §§ 2-2, 6-7, and thus should have been afforded the "due process rights" to which adversely affected or aggrieved parties are entitled throughout the proceedings by statute and local ordinance, Utah Code Ann. § 17-27a-706(2); San Juan County Zoning Ordinance § 2-2(2)(f).[6]

---

6. We note that to uphold a land use body's decision, courts must "determine[e] whether substantial evidence supports the [body's] decision" and in doing so must "consider all the evidence in the record, *both favorable and contrary* to the [body's] decision." *Patterson v. Utah County Board of Adjustment*, 893 P.2d 602, 604 (Utah Ct. App. 1995) (emphasis added). If we were to adopt Appellees' argument that NMA did not have a right to present evidence in the early stages of the proceeding, then it would not be possible for a court to consider both favorable and contrary evidence in this case because the only evidence

(continued…)

¶16   "Due process requires, at a minimum, adequate notice and an opportunity to be heard in a meaningful manner." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 111, 299 P.3d 990 (quotation simplified). This typically requires that "parties [have] the opportunity to present evidence, objections, and arguments, to the end that the court may be enabled to fairly and intelligently pass upon and determine the questions presented for decision." *Id.* (quotation simplified).

¶17   Here, NMA was denied due process under the statute and county ordinance because it was never provided an opportunity to present its evidence of sPower's alleged failure to comply with the amended CUP, which was critical to the ultimate decisions of both the Planning Commission and the County Commission. In its original order, the district court correctly recognized that "[t]he County's procedures must still comply with basic due process in order to be valid" and explicitly contemplated that the County Commission would remedy NMA's deprivation of due process by (1) allowing NMA "to argue its side of the case" and (2) allowing NMA "to present its own evidence." On remand, the County Commission did not comply with these instructions from the district court. The County Commission allowed NMA to be heard—to argue—but did not allow it to present its evidence that sPower was not complying with the amended CUP.

¶18   NMA then again sought judicial review of the County Commission's decision in the district court. This time the court

---

(…continued)

presented would be favorable to the County Commission's and Planning Commission's decisions. The relevant statutes and zoning ordinances could not have meant to foreclose contrary evidence from being placed in the record, thereby precluding meaningful judicial review.

stated that it "did not mean for the county commission to take evidence if it hadn't taken evidence in the first place"[7] and opined that NMA's due process rights were vindicated. We are not convinced. It appears that the district court recast what it did in its original order to ratify the due process deprivation that it had earlier condemned and sought to rectify. In the original order, the court explicitly found that NMA was not afforded due process and remanded to the County Commission to remedy that error by allowing NMA to (1) be heard and (2) present its own evidence, which it was never allowed to do at any stage of the proceeding. This first ruling was manifestly correct.

¶19    NMA was denied its due process rights because it was never provided "an opportunity to be heard in a meaningful manner" by being given "the opportunity to present evidence," which was critical to determining the ultimate question of whether sPower was complying with the amended CUP. *See Jordan River*, 2012 UT 84, ¶ 111 (quotation simplified). We therefore remand to the district court and instruct it, in the event it does not stay the proceedings,[8] to remand the case to the

---

7. It may well be that the district court did not mean that the County Commission itself had to take evidence—as an appellate body in the land use planning scheme of things, it may not be positioned to do so. But if the County Commission was unable to take that evidence, then the County Commission should have remanded the matter to the Planning Commission to receive NMA's evidence.

8. We were informed at oral argument that there is separate pending litigation regarding the option to purchase agreement between the parties. As we understand it, if NMA is successful in that action, it will essentially moot this administrative proceeding because sPower would be required to acquire NMA's property, resulting in NMA losing its standing in this

(continued…)

County Commission for it to take evidence from NMA as previously mandated or, if it is not in a position to itself receive the evidence, to in turn remand to the Planning Commission so that it can do so. With this evidence of record, the County Commission will then be positioned to appropriately reconsider its decision upholding the Planning Commission's decision not to revoke the amended CUP in light of that evidence.

## CONCLUSION

¶20    The district court erred in granting Appellees' motion for summary judgment because the County Commission did not follow the court's initial mandate and provide NMA the opportunity to present evidence. We therefore reverse the summary judgment and remand for further proceedings consistent with this opinion.

───────────

CHRISTIANSEN FORSTER, Judge (concurring in result):

¶21    I agree with the majority that NMA, comprised of adversely affected persons, had the right to appeal the adverse decisions of the County Commission to the district court. I also ultimately agree that NMA had a due process right to be heard and participate in the Planning Commission's hearing on

───────────

(…continued)
case. It was suggested at oral argument that perhaps this proceeding should be stayed pending the resolution of that litigation. But we are not in the best position to consider the suggestion. The district court, however, has the prerogative, should it be persuaded that it is the sensible thing to do, to stay this proceeding pending resolution of that potentially dispositive litigation.

whether to revoke the amended CUP, but I do not think that NMA's right to due process is grounded in the right to appeal, as the majority does.

¶22    But before turning to that question, I think it relevant to note that I do not believe that the district court actually ruled on the question of whether NMA had a due process right to be heard at the revocation hearing. The first time NMA sought judicial review in the district court, the court's ruling and the basis of its grant of summary judgment to NMA was primarily concerned with whether NMA was granted due process with respect to sPower's ex parte motion for reconsideration of the County Commission's reversal of its initial decision, not whether it was granted due process before the Planning Commission. Specifically, the first time the district court considered NMA's challenge to the County Commission's ruling, it determined that the County Commission had not afforded due process to NMA, because "the County based its decision on an ex parte communication. NMA received neither notice of the letter nor an opportunity to be heard in opposition." The district court remanded the case to the County Commission to give NMA the chance to respond specifically to the motion for reconsideration.

¶23    After the district court's first ruling, NMA requested remand to the Planning Commission so that it could have a chance to present evidence on whether sPower had complied with the mitigation requirements in the amended CUP. But the County Commission's Amended Decision on Remand declined to remand the appeal to the Planning Commission, explaining, "[W]e no longer view such a remand as helpful because now its sole purpose would be to allow NMA to comment, which we have determined is not a right that the Planning Commission was obligated to recognize." When it sought judicial review in the district court a second time, NMA challenged this determination in its motion for summary judgment.

¶24    But in ruling on the motions for summary judgment, the district court again focused on the due process to which NMA was entitled in connection with the County Commission's reconsideration of its initial decision. The district court explained,

> [W]hat I said the County had to do, was to give [NMA] a chance to respond to the motion, essentially a motion to reconsider that was filed by sPower, and evaluate those arguments and consider—I may have said something about taking evidence, but I did not mean for the County to take evidence if it hadn't taken evidence in the first place.

Once again, the district court did not specifically address NMA's due process arguments related to its exclusion from the Planning Commission's revocation hearing, though the district court denied NMA's motion for summary judgment, which was premised in part on that argument.[9]

¶25    We frequently decline to consider issues that have not first been addressed by the district court. However, Appellees have not suggested that we should do so under the circumstances of this case, and indeed, as the deprivation of due process question is a matter reviewed for correctness, we are in as good a position as the district court to rule on the issue. *See*

---

9. In its Order Denying Petitioner's Motion for Summary Judgment and Granting Respondents' Cross-Motion for Summary Judgment, the district court specifically ruled, "The Court therefore DENIES NMA's motion for summary judgment and GRANTS the County's cross-motion for summary judgment. This order fully resolves all claims at issue in this matter and serves as the Court's FINAL JUDGMENT."

*Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 47, 299 P.3d 990 ("Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." (quotation simplified)); *see also Pacific West Cmtys., Inc. v. Grantsville City*, 2009 UT App 291, ¶ 20, 221 P.3d 280 ("When a district court reviews an order of a local land use authority and we exercise appellate review of the district court's judgment, we act as if we were reviewing the land use authority's decision directly, and we afford no deference to the district court's decision." (quotation simplified)).

¶26 While I ultimately agree with the majority that NMA was deprived of its due process rights when it was not permitted to be heard or participate in the Planning Commission's revocation hearing, I reach this conclusion for different reasons. The majority determines that the right of appeal granted to those adversely affected by the Planning Commission's decision not to revoke a CUP and the due process rights required to be respected by the appeal authority necessarily include the right to participate and present evidence at the revocation hearing itself. *See supra* ¶ 13. But the right to appeal from a decision of a planning commission is purely procedural and does not give rise to due process protection. *See Fusco v. Connecticut*, 815 F.2d 201, 205–06 (2d Cir. 1987) ("The opportunity granted abutting landowners . . . to appeal decisions of planning and zoning commissions and zoning boards of appeal is purely procedural and does not give rise to an independent interest protected by the [F]ourteenth [A]mendment."). Thus, I disagree that the appellate rights guaranteed by state law and the San Juan County Zoning Ordinances are what give rise to a protectable property interest and due process rights for NMA in the context of the revocation hearing.

¶27 Instead, I find more merit in NMA's position that because the amended CUP imposed mitigation conditions on sPower for the protection of NMA members' property as a condition of

approval,[10] those adjacent property owners had a legitimate claim of entitlement in the enforcement of this permit and the right to participate in a fair procedure regarding sPower's compliance with the mitigation required by the amended CUP. The Fourteenth Amendment mandates that "[n]o state shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.[11] To prevail on either a procedural or substantive due process claim, a plaintiff must first establish "a property or liberty interest warranting due process protection." *Patterson v. American Fork City*, 2003 UT 7, ¶ 23, 67 P.3d 466 (quoting *Crider v. Board of County Comm'rs*, 246 F.3d 1285, 1289 (10th Cir. 2001)). The definition of what type of property is

---

10. In San Juan County, a CUP cannot be approved unless "the Planning Commission [imposes] such requirements and conditions as are necessary for the protection of adjacent properties and the public welfare" and evidence presented to the Planning Commission establishes that the conditional use will not "be detrimental to the health, safety or general welfare of the persons residing or working in the vicinity, or injurious to property . . . in the vicinity." San Juan County, Utah, Zoning Ordinance § 6-4 (2011). While section 6-6 of the ordinance states that "[a] public hearing on a [CUP] application may be held if the Planning Commission shall deem a hearing to be necessary and in the public interest," *id.* § 6-6, section 6-10 provides that "[n]o conditional use permit shall be revoked until a hearing is held by the Planning Commission" and that "the permittee shall be given an opportunity to be heard" at the hearing, *id.* § 6-10.

11. NMA argues that the Utah Constitution also provides state constitutional protections. *See* Utah Const. art. I, § 7 ("No person shall be deprived of life, liberty or property, without due process of law."). But NMA does not separately analyze the state constitution, so neither do I.

safeguarded by the Fourteenth Amendment has evolved over the years to encompass not only tangible physical property but a "legitimate claim of entitlement" to certain circumscribed benefits. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."). To have a valid property interest in a state-created right, a plaintiff "must have more than a unilateral expectation of it." *Id.* Only once the state has legislatively created a certain entitlement and a person can demonstrate a legitimate claim to that entitlement is the Fourteenth Amendment implicated to ensure that the person is not deprived of the entitlement absent due process of law. *Lucas v. Murray City Civil Service Comm'n*, 949 P.2d 746, 752 (Utah Ct. App. 1997).

¶28    Here, NMA's property right is not simply its "interest in the unrestricted use and enjoyment of the NMA Property" or the "economically viable use or peaceful enjoyment of the NMA property." Rather, its protected property interest is in San Juan County's enforcement of the mitigation required by the amended CUP and the right to participate in the fact-finding determination of whether sPower, the permittee, failed "to observe any condition specified or fail[ed] to observe other requirements of this Ordinance in regard to . . . conduct of the use or business as approved." San Juan County, Utah, Zoning Ordinance § 6-10 (2011). These rights seem to arise from the Planning Commission's approval of the amended CUP conditioned on sPower undertaking as much flicker, light, and sound mitigation as possible. NMA's right to San Juan County's continued enforcement of those mitigation requirements is different from the public's interest in San Juan County's enforcement of its general zoning laws because the amended CUP's approval was expressly conditioned on mitigation of the detrimental effects of the wind facility on NMA members'

property. As the permit holder, sPower clearly had a property interest in the continuation of the amended CUP, which entitled it to due process before its permit could be revoked. But as adjoining landowners who were to be protected from sPower's conditional use of its property, it would seem that NMA's members were also entitled to the enforcement of the mitigation required by the amended CUP, which would have given them the right to be heard and present evidence at the revocation hearing.[12]

¶29    For these reasons, rather than those expressed by the majority, I agree that this case should be remanded to give NMA an opportunity to be heard before the Planning Commission.

────────

12. "Due process requires . . . an opportunity to be heard in a meaningful manner." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 111, 299 P.3d 990 (quotation simplified). To comply with due process, a hearing "must provide parties the opportunity to present evidence, objections, and arguments, to the end that the court may be enabled to fairly and intelligently pass upon and determine the questions presented for decision." *Id.* (quotation simplified).